UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anna Walker,  Civil No. 09-1841 (DWF/FLN)

          Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

Fairview Health Services,
and its Hospitals, Clinics and Pharmacies,

          Defendant.

_____

Dorene R. Sarnoski, Esq., Dorene R. Sarnoski Law Office, counsel for Plaintiff.

Sara Gullickson McGrane, Esq., and Jessica M. Marsh, Esq., Felhaber Larson Fenlon & Vogt, PA, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Fairview Health Services, and its Hospitals, Clinics and Pharmacies. (Doc. No. 19.) For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

This matter stems from Plaintiff Anna Walker's allegations that she was not hired for a Registered Nurse ("RN") position at Fairview Southdale Hospital because of her race and national origin. Walker also contends that she was terminated from her position with the hospital in retaliation for her complaints of discriminatory conduct. Finally, Walker asserts that the hospital's failure to hire her violated an implied contract, or

constituted promissory estoppel, in that the hospital breached its promise to employ her after she received the benefits of the hospital's tuition reimbursement program.

Walker is a female of African descent. (Compl. ¶ 4.) Walker worked as a Certified Nurse Assistant ("CNA") at Fairview Southdale Hospital from 1998 to 2007. (Walker Dep. at 24.)

In 2004, Walker started an RN program funded, in part, by Fairview's tuition reimbursement program. (*Id*. at 62.) Through that program, Fairview paid 75% of Walker's tuition, capped at $2,000 per year. (*Id*.) Walker had learned of the program via a bulletin board or information wall at Fairview Southdale. (*Id*. at 58.) Walker testified that the tuition reimbursement program was one of her benefits as defined in the contract that she had as a member of the Service Employees International Union ("SEIU"). (*Id*. at 58-60.)

The SEIU contract between Fairview Southdale and the SEIU contained the following provision:

> ARTICLE XVI:  EDUCATIONAL DEVELOPMENT
>
> (A)   The Hospital shall pay all employees regularly scheduled to work twenty (20) or more hours per week, minimum reimbursement in the amount of seventy five percent (75%) of tuition and required fees and books up to two thousand dollars ($2,000) per year for educational development under the following circumstances:
>
> * * * *
>
> (4)   An employee must be employed by the Hospital for a period of six (6) months before the Employee is eligible for such reimbursement and must remain in the employ of the Hospital for a period of six (6) months after the completion of the education. Provided, nevertheless, that employees shall repay

>       the Hospital any reimbursement they have been paid
>       thereunder to the extent that they do not continue to, or make
>       themselves available to return to, work at the Hospital for at
>       least six (6) months after the completion of the educational
>       unit. Any amount due the Hospital under this Section may be
>       deducted from the employee's final paycheck.

(Walker Dep. Ex. 19 at 29-30; Ex. 6 at DEF00024.)[1] Walker received the maximum tuition benefit for the program until she graduated with her RN degree in December 2006. (*Id*. at 62-63.)

Once she obtained her RN license in June 2007, Walker applied for four positions at Fairview. (Walker Dep. at 109.) Fairview's recruitment process is managed by Recruiters and Recruitment Assistants. (Heckmann Dep. at 23.) Nurse Managers post positions based on their departmental needs and recruiters screen applicants for things such as education and background experience, work histories, reasons for leaving positions, and grade point averages. (Esterberg Dep. at 13-15.) The applicants are then routed back to the Nurse Managers who make the final hiring decisions. (*Id*. at 14-15.)

The terms and conditions of the RN employment at Fairview Southdale are governed by a collective-bargaining agreement between the Minnesota Nurses Association ("MNA") and Fairview Southdale. (Heckmann Dep. at 24-29.) This contract includes mandates for hiring nurses. (*Id*. at 25.) Specifically, the MNA contract

---

[1]    Even though Walker testified at one point during her deposition that she did not remember the SEIU agreement specifically (Walker Dep. at 49, ln. 17), Walker testified to being aware of each of the program requirements as delineated in the SEIU's description of the tuition reimbursement program. And although Walker argues for an alternative interpretation of the program requirements (namely, that it required Fairview to employ her for one year after she completed her education), Walker has produced no evidence to support this interpretation.

3

includes seniority hiring requirements. Under these requirements, if a bargaining unit member with seniority applies for an open position, "the person with the high seniority will get the position." (*Id*. at 26.) For every position, the recruiters rank the candidates in order of their seniority. (*Id*. at 26-27.) Internal candidates are considered for a seven-day posting period. (Kachman Dep. at 17.) The seniority rankings then are routed to the hiring manager and, based on the MNA contract, the employees with the most seniority are given the position. (Heckman Dep. at 27; Kachman Dep. at 17.)

It is undisputed that two of the positions for which Walker applied, 07-19865 (RN Med/Surg Ortho Neuro) and 07-20105 (RN Med/Surg Medical) ("RN Job #1" and "RN Job #2") were withdrawn without being filled. (Heckmann Dep. Ex. 6 (Doc. No. 27-1 at 52).)

Recruiter Hanane Kachman was involved in hiring for position 07-19883 (RN Med/Surg Surgical) ("RN Job #3"). Fairview Southdale hired Mary Moren for this position. Kachman testified that Moren was an internal candidate with MNA seniority. (Kachman Dep. at 64-65.) Prior to hiring her, the Nurse Manager, Marylou Hofer, asked Moren's previous supervisor if Moren "had any corrective action or any problems like that" and was informed that she did not. (Hofer Dep. at 29-30.) Because Moren had MNA seniority, Kachman never forwarded Walker's application to the hiring manager. (Kachman Dep. at 64-65.) Hofer testified that Moren later resigned from this position and noted that she had problems with her "job performance the way that she delivered care to the patients." (Hofer Dep. at 27-28.)

The remaining position for which Walker applied, 07-0123 (RN-Neuroscience)

4

("RN Job #4") was with Fairview University.  Fairview University is not governed by the MNA contract.  There, recruiters conduct initial screening interviews and reference checks and Nurse Managers conduct follow-up interviews.  Recruiter Pat Esterberg, Recruitment Assistant Katie O'Neill, and Nurse Manager Denise Moser were involved in the hiring for this position.  Esterberg interviewed Walker for the position.[2]  (Walker Dep. at 98.)  Afterward, O'Neill conducted a reference check and documented:

> Poor reference from current employer (Northridge).  Does not document and does not feel the need to even after repeated coachings.  Current manager would not rehire her.  Said she is a nice person, but not a good employee.

(Doc. No. 27-1 at 34.)  Walker's first RN position was at Northridge nursing home for approximately two months, on a part-time basis, at the end of 2007.  (Walker Dep. at 11, 14-15, 18-19.)  Because of this reference, Walker was not hired.  (Heckmann Dep. at 66.)

Walker contacted Heckmann in human resources after she received the rejection letter from Esterberg in November 2007.  The two met on December 11, 2007, to discuss her employment files.  Walker states that, at that time, Heckmann did not mention the negative reference for RN Job #4.  Walker testified, "I told him that I worked here all these years and I was getting tuition reimbursement, and Elaine in the finals always remind us that this is not free money, you have to work for it.  But now that I'm done, I can't get no job."  (Walker Dep. at 50.)  Heckmann recommended that Walker work on her resume and reapply.  (*Id.* at 51.)

---

[2]   Walker notes that the application information for Walker incorrectly noted that she was "Not Interviewed" (Sarnoski Aff. Ex. H, DEF000310).  However, Fairview admits that Walker was indeed interviewed for this position.

Walker also sent a letter to Brad Beard, President of Fairview Southdale on December 1, 2007. In that letter, Walker stated:

> I am taking the liberty of writing to you about a problem which is getting more serious each day. I have been an employee of Fairview Southdale Hospital for nine years and held the position as a nursing assistant in the float/escort department before transferring to station 33/73 after my department was shut down.
>
> This year, I graduated with an Associate Degree as a Registered Nurse (RN) and applied for positions on stations 33, 66, 55. I had three interviews (one of which was at the University of Minnesota-Fairview) that all seemed promising but have not been offered a position. Instead, I see others with the same qualifications from outside the company or those who have worked for less than one year have been hired.
>
> I have never had any disciplinary actions taken against me so this is hard for me to understand why I have not been hired. Could you please look into these matters? I look forward to meeting or hearing from you and to find a resolution. I am available for discussion almost any time and can be reached at the above phone lines. Thank you for your cooperation and promptness.

(Doc. No. 27-1 at 32.) Shortly thereafter, Beard telephoned Walker to discuss the letter. Beard told Walker that "for every one position there are 25 people" and told Walker "to keep looking." (Walker Dep. at 44.)

Walker also raises issues stemming from the termination of her casual CNA status. Walker was initially hired as a .8 full-time equivalent CNA in 1998. (Walker Dep. at 29-30.) She reduced her hours to .5 full-time equivalent status in 2003 and then further decreased her hours to .3 full-time equivalent status in 2005 or 2006. (*Id*. at 30-32.) Then, in September 2007, Walker went on "casual" status. (*Id*. at 32.) Walker testified that casual status CNAs are on call and come in only when needed. (*Id*. at 34.) It is not

disputed that Walker did not work any casual hours during the months of September, October, and November 2007. (*Id.* at 35.) Walker worked eight hours on December 10, 2008. (*Id.*) Walker testified that on casual status, she was required to work a certain minimum number of hours but she did not know that minimum number. (*Id.* at 34.)

In a letter dated December 31, 2007, Business Operations Manager Tammi Trelstad notified Walker that she was mailing Walker's evaluation because Walker had not returned a number of Trelstad's calls "over the past month." (Doc. No. 27-1 at 21.) Trelstad further noted:

> I also noticed that you have not picked up any work shifts in the last three months. As outlined in the Staffing Policy Manual, Casual part-time employees are required to:
>
> 1. Be called when there is a staffing need that he/she can fill.
>
> 2. Be available to work a minimum of one shift every two months.
>
> Please contact me by January 15, 2008 regarding your intention to continue as Casual status or resign your position.

(*Id.*)

On January 17, 2008, Patient Care Supervisor Lauri Buckentin, RN, sent a letter to Walker that stated:

> Our staffing records indicate that you are listed as a casual employee. Since you have not met the minimum work requirement stated in the contract (Section 6), and have not responded to the warning letter sent December 31, 2007 (see attached), your status as a casual CNA has been terminated effective January 17, 2008.

(*Id.* at 22.)  Walker testified that she did not talk to anyone at Fairview Southdale between her receipt of Trelstad's letter of December 31, 2007, and January 17, 2008. (Walker Dep. at 42.)

In a letter dated January 27, 2008, Walker wrote to Heckmann:

> I am taking the time to write to you about the problems I talked to you about when I came to view my employment records for any disciplinary actions and so on.
>
> I have been an employee of Fairview Southdale Hospital for nine years and held the position as a nursing assistant in the float/escort department before transferring to station 33.  In July 2007 I got my license as a Registered Nurse (RN) and applied for positions on stations 33, 55, 66 and not one of them offer me a position.  I feel discriminated against at so many levels.  I see others who have worked for less than a year have been hired, while others have been promised jobs upon graduation.  Could you please comment on these matters?  Thank you for your cooperation and promptness.

(Walker Dep. at 83; Doc. No. 27-1 at 31.)

On July 25, 2008, Walker filed a Charge of Discrimination with the Minnesota Department of Human Rights.  (Doc. No. 27-1 at 29.)  After a "No Probable Cause" finding, Walker brought suit here.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir.1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

8

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I. Discrimination under Title VII and 42 U.S.C. § 1981

Walker alleges that she was discriminated against on the basis of her race and national origin in violation of Title VII and 42 U.S.C. § 1981.[3] Fairview argues that both claims fail as a matter of law.

The Court analyzes Walker's claims under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Riser v. Target Corp.*, 458 F.3d 817, 819 (8th Cir. 2006). Under *McDonnell Douglas*, Walker must first establish a *prima facie* case of racial discrimination. If Walker is able to establish a *prima facie* case of discrimination, the burden shifts to Fairview to produce a legitimate, non-discriminatory reason for the

---

[3] The elements and analysis of a discrimination claim under Title VII and § 1981 are the same. *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003).

adverse employment action. *Id*. at 820.  If Fairview is able to articulate such a reason, the burden then shifts back to Walker to show that the proffered reason is a pretext for discrimination. *Id*.

To establish a *prima facie* case of race or national origin discrimination, Walker must demonstrate that:  (1) she is a member of a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) Fairview filled the position with a person not in the same protected class.  *Dixon v. Pulaski County Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009).  Fairview contends that Walker cannot meet the third element of her *prima facie* case.  In addition, even if Walker can make out her *prima facie* case, Fairview asserts that Walker cannot demonstrate pretext.

Even if the Court assumes that Walker could make out her *prima facie* case, her claim cannot survive because Fairview has demonstrated that it had legitimate, non-discriminatory reasons for not hiring her for RN Jobs #3 and #4[4] and Walker cannot demonstrate pretext.  The record shows that Walker was not hired for RN Job #3 because the position was given to Moren, an RN with MNA Seniority.  And any performance issues that Moren had once that she was in the position are not relevant to Fairview Southdale's decision to hire her—there is no evidence of any performance issues with Moren made known to Fairview Southdale prior to the hiring.  The record further demonstrates that Walker was not hired for RN Job #4 because of the reference.  Although Walker has submitted a letter from Kim Nesbitt, RN Director of Resident

---

[4]   Because RN Jobs #1 and #2 were withdrawn, the Court need not address these two positions.

Services at Northridge Care Center, Walker has submitted no evidence that Nesbitt gave O'Neill the reference for Walker. (*See* Doc. No. 27-1 at 33.) Moreover, Walker raises several concerns regarding Esterberg's and Moser's failure to recall Walker's negative reference and the decision not to hire Walker, but their failure to remember details that occurred years prior is not sufficient to establish pretext. And any remaining facts that Walker raises regarding Fairview's hiring practices do not demonstrate pretext. As a result, Walker has not rebutted Fairview's legitimate, non-discriminatory reason for not hiring Walker for RN Job #4.

As a final matter, Walker offers no support for her testimony that other white nursing assistants who participated in the tuition reimbursement program were offered jobs before they even took their boards. Walker has not specifically identified any similarly-situated individuals outside her protected class who were treated differently. As such, this argument fails.

Walker has not set forth any evidence to demonstrate that Fairview's hiring decisions were motivated by race. As a result, Walker has failed to establish pretext and Walker's discrimination claims fail.

**II.     Retaliation**

Walker further asserts that Fairview retaliated against her because she complained about unlawful, discriminatory treatment. In order to establish a *prima facie* case of retaliation, Walker must demonstrate that (1) she engaged in statutorily-protected conduct; (2) Fairview took adverse employment against her; and (3) a causal connection exists between the two. *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 702 (8th Cir. 2006);

*Kasper v. Federated Mutual Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005).  If Walker establishes a *prima facie* case, the burden of production shifts to Fairview to show a legitimate, non-discriminatory reason for its action.  *Kasper*, 425 F.3d at 502.  Then, Walker must establish that the proffered non-discriminatory reason was a pretext for discrimination.  *Id*.

Walker's retaliation claims fail because Walker did not engage in any statutorily-protected conduct prior to the termination.  Walker's first claim of discriminatory treatment occurred in the January 27, 2008 letter to Heckmann.  As such, Walker's *prima facie* case of retaliation fails.  Moreover, even assuming Walker could make out her *prima facie* case, Walker has not established pretext.  Fairview had legitimate, non-discriminatory reasons to terminate Walker after she failed to respond to their December 31, 2007 letter inquiring about Walker's casual status.  Walker has offered no evidence to support pretext.

**III.   Breach of Implied Contract and Promissory Estoppel**

Finally, Walker asserts claims for breach of implied contract and promissory estoppel, contending that because she participated in the tuition reimbursement program, Fairview was obligated to employ her as an RN for one year.  The Court grants Defendant's Motion for Summary Judgment on these claims.

Walker admits that the SEIU contract was the source of her tuition reimbursement benefits and has provided no evidence to the contrary.  (Walker Dep. at 58-59.)  The doctrines of promissory estoppel and implied contract only apply where no contract exists.  *Banbury v. Omnitrition Int'l Inc.,* 533 N.W.2d 876, 881 (Minn. App. 1995);

*Erickson Plus Ltd. v. Ventura*, No. C3-02-843, 2002 WL 31867733, at *2 (Minn. Ct. App. Dec. 24, 2002) ("when there is no express contract between the parties, an enforceable contract may be implied in fact . . . ."). Because the SEIU contract governed the tuition reimbursement program, Walker's implied contract and promissory estoppel claims fail.

Moreover, regardless of whether Walker believed that a contract existed that would require Fairview to employ her for a year after the tuition reimbursement, Walker has failed to set forth a clear and definite promise or offer from Fairview that this would occur.

Therefore, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [19]) is **GRANTED.**

2. The Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 22, 2011                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge